## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**DERRICK DWAYNE DELL**                                    **CIVIL ACTION NO.**

**VERSUS**                                                              **18-756-JWD-EWD**

**NANCY A. BERRYHILL**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 29, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DERRICK DWAYNE DELL**                                    **CIVIL ACTION NO.**

**VERSUS**                                                              **18-756-JWD-EWD**

**NANCY A. BERRYHILL**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Derrick Dwayne Dell ("Plaintiff"), brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability insurance benefits ("DIB").[1]  Plaintiff has filed an Opening Brief,[2] the Commissioner has filed an Opposition Memorandum,[3] and Plaintiff has filed a Reply.[4]

Based on the applicable standard of review under § 405(g) and the analysis which follows, it is recommended that the Commissioner's decision be affirmed.

## I.    Procedural History

Plaintiff filed an application for DIB[5] alleging disability beginning July 1, 2014[6]  due to chronic obstructive pulmonary disease ("COPD"), past heart attacks, neck injury, hypoglycemia,[7]

---

[1] *See* AR pp. 183-84 (application for DIB); AR pp. 1-10 (Notice of Appeals Council Action July 19, 2018).  References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] p. [page number(s)]."  References to the record of administrative proceedings filed in this case are designated by "(AR [page number(s)]."

[2] R. Doc.  8.

[3] R. Doc. 10.

[4] R. Doc. 13.

[5] AR pp. 183-84.  The DIB Application Summary is dated May 15, 2015; however, therein, it states that the Administration discussed Plaintiff's DIB application with Plaintiff on September 2, 2014.  AR p. 183.  The Disability Determination Explanation and the Administrative Law Judge's Decision reflects that the DIB application was actually filed on August 30, 2014.  AR pp. 29, 90.

[6] AR pp. 90, 183.  *See* the discussion at n. 25 below regarding the ambiguity in the record with respect to Plaintiff's disability onset date.

[7] *See* AR p. 90 (Disability Determination Explanation referencing COPD, past heart attacks, neck injury, and hypoglycemia on Plaintiff's DIB application); AR pp. 207, 212 (Disability Report referencing these impairments and Plaintiff's response referencing neck and back injuries).

bursitis of the right hip, rotator cuff impingement of the left shoulder, post-concussive disorder, generalized anxiety disorder, and depression. Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2016.[8] Plaintiff's claim was initially denied on May 15, 2015.[9] Thereafter, Plaintiff requested a hearing before an ALJ.[10] A hearing was held on May 13, 2016 at which Plaintiff, represented by counsel, testified.[11] Vocational Expert ("VE") Christy Lamandre McCaffery also testified.[12]

On October 11, 2016, the ALJ issued a notice of unfavorable decision.[13] The Appeals Council issued its decision on July 19, 2018, denying Plaintiff's DIB claim.[14]

On August 9, 2018, Plaintiff filed his Complaint in this Court.[15] Plaintiff exhausted his administrative remedies before timely filing this action for judicial review and the Appeals Council's decision is the Commissioner's final decision for purposes of judicial review.[16]

## II.    Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.[17] If the Commissioner fails to apply the correct legal

---

[8] AR pp. 4, 187 *but see* AR p. 90. The Commissioner initially and erroneously determined that date to be September 30, 2015.
[9] AR pp. 39, 99-98, 100-03.
[10] AR pp. 106-07.
[11] AR p. 105 (fee agreement); AR pp. 120-25 (Notice of Hearing); AR pp. 53-89 (transcript of hearing).
[12] AR pp. 81-85, 257-58.
[13] AR pp. 36-52.
[14] AR pp. 1-10.
[15] R. Doc. 1.
[16] *See* 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised. You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").
[17] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.[18]

## III.    The ALJ's and Appeals Council's Decisions

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.[19]  The regulations require the ALJ to apply a five-step sequential evaluation to each claim for benefits.[20]  In the five-step sequence used to evaluate claims, the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe medically determinable impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work.[21]

The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability.[22]  If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity ("RFC"), age, education and past work experience, that he or she is capable of performing other work.[23]  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work.[24]

---

[18] *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) *overruling by statute on other grounds* (citations omitted).
[19] 20 C.F.R. §§ 404.1505; 416.905.
[20] 20 C.F.R. §§ 404.1520; 416.920.
[21] *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).
[22] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).
[23] 20 C.F.R § 404.1520(g)(1).
[24] *Muse*, 925 F.2d at 789.

**A.  The ALJ's Finding that Plaintiff Is Not Disabled**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability date, July 1, 2014[25] through September 30, 2015, the date Plaintiff was last insured according to the ALJ.[26] At the second step, the ALJ found that Plaintiff's bursitis of the right hip, rotator cuff impingement of the left shoulder, COPD, and post-concussive disorder were severe impairments.[27]  The ALJ found that Plaintiff's mental impairments of generalized anxiety disorder and depression were only slight abnormalities that caused no more than minimal limitations on his ability to perform basic mental work activities and were therefore non-severe prior to Plaintiff's date last insured.[28]

At the third step, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment. At this step, the ALJ found that (1) the requirements of Listing 1.02 (Musculoskeletal System/ Major dysfunction of a joint (due to any cause)) were not met because Plaintiff did not have an inability to ambulate or perform fine or gross movements effectively, which the ALJ apparently

---

[25] The record reflects an ambiguity with respect to the correct disability onset date for Plaintiff.  In his DIB application, Plaintiff initially stated that July 1, 2014 was his disability onset date, which was the date considered in the initial denial of his claims. *See* AR pp. 90, 183, *cf.* Plaintiff's Opening Brief at p. 4, which incorrectly states that Plaintiff gave the onset date of June 13, 2013 in his DIB application.   At the hearing, Plaintiff stated that his onset date was actually September 13, 2014, the date on which he was injured at work.  *See* ALJ hearing testimony at AR p. 57 ("The onset date should be 9/13/14, not July 1, '14.  That's when the claimant became disabled.  That's when he stopped working.") *and see* Plaintiff's post-hearing brief to the ALJ at AR p. 259 referencing September 2014.  Nevertheless, the ALJ and the Appeals Council relied on the earlier July 1, 2014 date as Plaintiff's disability onset date.  *See* AR pp. 4, 7, and 41.  As the July and September onset dates are only about two and half months apart, and well before Plaintiff's date last insured, *i.e.*, March 31, 2016, no prejudice arose in the application of the earlier, July 1, 2014, onset date.  *See, e.g.*, SSR 83-20, 1983 WL 31249 (S.S.A.) (rescinded and replaced as of October 2, 2018):  ("In title II cases, disability insurance benefits (DIB) may be paid for as many as 12 months before the month an application is filed. Therefore, the earlier the onset date is set, the longer is the period of disability and the greater the protection received.").
[26] AR p. 41.
[27] AR p. 41.  The ALJ noted that Plaintiff had also been diagnosed with diabetes mellitus and hypertension.  AR p. 41. However, the ALJ found that Plaintiff had only limited treatment for those impairments and Plaintiff made no symptom complaints regarding them during his testimony.  Further, there was no evidence that those impairments caused any end-organ damage prior to Plaintiff's date last insured.  Therefore, the ALJ did not find those impairments severe.  AR p. 41, *citing* AR pp. 279 and 337-61.  Plaintiff did not contest this finding in his appeal.
[28] AR p. 41.

4

considered with respect to Plaintiff's bursitis of the right hip and left shoulder rotator cuff impingement. Next, the ALJ found that the requirements of Listing 3.02 (Respiratory Disorders/Chronic respiratory disorders) were not satisfied because there was no evidence of the necessary medical tests, which the ALJ apparently considered with respect to Plaintiff's COPD. Finally, the ALJ found that Plaintiff did not meet the requirements of Listing 11.18 (Traumatic brain injury).

The ALJ then evaluated Plaintiff's residual functional capacity ("RFC")[29] to determine whether, despite Plaintiff's severe impairments, Plaintiff was able to do any of his past relevant work or other work in the national economy. The ALJ found that Plaintiff could perform a reduced range of light work prior to his date last insured, with limitations.[30] Specifically, the ALJ found that Plaintiff had the RFC to perform a restricted range of light work, except Plaintiff could frequently balance, stoop, and climb ramps and stairs; could occasionally climb ladders, ropes, and scaffolds; could occasionally kneel, crouch and crawl; could not reach overhead with his upper left arm; needed to avoid concentrated exposure to pulmonary irritants; and, due to his post-concussive syndrome, was limited to understanding, remembering, and carrying out simple and routine tasks.[31] The ALJ thus implemented postural, manipulative, and environmental limitations into Plaintiff's RFC, and further, limited Plaintiff to simple tasks.

---

[29] "Residual functional capacity" is a measure of a claimant's capacity to do physical and mental work activities on a regular and sustained basis. It is the foundation of the findings at steps four and five. 20 C.F.R. §§ 404.1545; 416.945.
[30] AR p. 43. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b); 416.967(b). "'Frequent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251, *6 (S.S.A.). *See also* SSR 96-9P, 1996 WL 374185, *6 (S.S.A. July 2, 1996) ("If an individual is able to stand and walk for approximately 6 hours in an 8-hour workday (and meets the other requirements for light work), there may be a significant number of light jobs in the national economy that he or she can do even if there are not a significant number of sedentary jobs.").
[31] AR pp. 43, 46.

Given this RFC and based on the testimony of the VE, the ALJ concluded that Plaintiff would not be able to perform his past relevant work of food preparation cook, dishwasher, and pizza delivery driver, all of which were classified as "medium in exertional demand and unskilled (SVP-2)"[32] or that of pizza cook, which was classified as "medium in exertional demand with an SVP of 5."[33]   Proceeding to the fifth step, the ALJ relied on the Medical-Vocational Guidelines (20 C.F.R. Part 404, Subpart P, Appendix 2) as a framework and the testimony of the VE to make his disability finding.[34]  Specifically, the ALJ found Plaintiff to be a younger individual based on Plaintiff's age of 39-years-old on the date last insured,[35] with a limited education,[36] and ability to communicate in English.  Considering the foregoing, along with Plaintiff's work experience and the ALJ's finding that Plaintiff could perform a restricted range of light work, the ALJ relied on the testimony of the VE to determine that Plaintiff could perform the requirements of the occupations of (1) inspectors, sorters, testers, samplers, and weighers, (2) cashiers, and (3) maids, and housekeeping cleaners, all of which are light in exertional demand and unskilled.  The ALJ found that such occupations existed in significant numbers in the national economy, even taking

---

[32] Specific Vocational Preparation ("SVP") is the amount of time needed to learn the techniques, acquire the information, and develop the facility for average performance in a specific job-worker situation. SVP comes from vocational education, civilian, military, and institutional work experience, apprenticeship, and from in-plant and on-the-job training.  "SVP-2" indicates vocational preparation beyond a short demonstration up to and including one month and thus is considered unskilled. *See* U.S. Department of Labor, Employment and Training Administration, Stock No. 029-013 00095-1, The Revised Handbook for Analyzing Jobs (1991) ("Handbook") found at https://skilltran.com/index.php/support-area/documentation/1991rhaj, p. 8-1 and 20 C.F.R. § 404.1568(a).

[33] AR p. 46 *and see* transcript of the VE's testimony at the hearing at AR pp. 82-83.  "SVP-5" indicates vocational preparation over six months up to and including 1 year and is thus considered skilled.  *See* the Handbook at p. 8-1, 20 C.F.R. §404.1568(c) and SSR 00-4P, 2000 WL 1898704 (S.S.A. Dec. 4, 2000).

[34] The Commissioner may use VE testimony at steps four and five of the sequential evaluation process to resolve complex vocational issues and provide evidence at the hearing before the ALJ.  SSR 00-04P, 2000 WL 1898704.

[35] *See* AR p. 46.  A younger individual is defined as an individual age 18-49.  *See, e.g.*, 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.00(g).

[36] While Plaintiff testified that he did not know the last grade he completed in school (AR p. 60), Plaintiff's disability report states that Plaintiff has a tenth grade education.  AR p. 208.

into consideration the VE's testimony that all such occupations would be reduced by one-half due to Plaintiff's limited education.[37]

### B.  The Appeals Council's Decision

The Appeals Council's final decision affirmed the ALJ's finding that Plaintiff was not disabled.[38]  In its decision, the Appeals Council adopted the ALJ's statements regarding the pertinent provisions of the Social Security Act, Regulations, and Rulings; the issues in the case; the evidentiary facts; Plaintiff's statements concerning his alleged symptoms; and the ALJ's findings and conclusions regarding whether Plaintiff was disabled.[39]  The Appeals Council also agreed with the ALJ's ultimate findings under steps one through five of the sequential evaluation; however, the Appeals Council held that the ALJ erroneously stated that Plaintiff's date last insured was September 30, 2015. Instead, the correct date last insured for Plaintiff based on his Social Security Earnings Records was March 31, 2016.[40]  Thus, in order to receive benefits, Plaintiff had to prove that he became disabled prior to March 31, 2016.[41]

The Appeals Council also reversed the findings of the ALJ and found that Plaintiff's generalized anxiety disorder and depression were severe impairments because they caused more than a minimal limitation in Plaintiff's ability to perform basic mental work activities.  The Appeals Council then re-considered Plaintiff's mental impairments under the revised "paragraph B" criteria listed in 20 C.F.R. Subpart P, Appendix 1, 12.00(E),[42] and the effects of those impairments on Plaintiff's functional abilities.[43]

---

[37] AR pp. 47-48 and pp. 83-85.
[38] AR p. 9.
[39] AR p. 4.
[40] AR p. 4 *and see* AR p. 187.
[41] *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) *citing* 41 U.S.C. § 423 (a) and (c) (other citations omitted).
[42] The revised "paragraph B" criteria were in effect when the Appeals Counsel issued its Notice of Action on November 20, 2017.
[43] AR p. 5.

Regarding the first functional area, *i.e.*, the ability to understand, remember, or apply information, the Appeals Council found "moderate" limitations.[44]   As to the second functional area, *i.e.*, the ability to interact with others, the Appeals Council found "mild" limitations.[45] Regarding the third functional area, *i.e.*, the ability to concentrate, persist, or maintain pace, the Appeals Council found "moderate" limitations.[46]  In the fourth functional area, *i.e.*, the ability to adapt or manage oneself, the Appeals Council found mild limitations.[47]  Although the Appeals Council found plaintiff's mental impairments to be "severe," they did not meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 because Plaintiff's mental impairments did not result in more than "moderate" limitations in any functional area.

The Appeals Council also adopted the ALJ's determination that Plaintiff had the RFC for light work and found that the limitation on the RFC to understanding, remembering, and carrying out simple and routine tasks adequately accommodated Plaintiff's moderate limitations in the ability to understand, remember, or apply information and the ability to concentrate, persist, or maintain pace.[48]

The Appeals Council held that Plaintiff, a younger individual with a limited or less education who had past relevant work of a semiskilled or skilled nature, had the RFC to perform a reduced range of the light exertional level of work and was thus not disabled within the framework of Rule 202.18.  The Appeals Council credited the VE's testimony that Plaintiff could

---

[44] AR p. 5, *citing* AR pp. 409, 427, and 459.

[45] AR p. 5, *citing* AR pp. 225-26.

[46] AR p. 5.  The ALJ found only mild limitations in the first and third functional areas.

[47] AR p. 5, *citing* AR pp. 221-23.

[48] AR p. 5, *citing* AR pp. 43, 46.   *See Adams v. Astrue*, No. 07-1248, 2008 WL 2812835, at *4 (W.D. La. June 30, 2008) ("A limitation to simple, repetitive, routine tasks adequately captures deficiencies in concentration, persistence or pace.") (citations omitted).

perform the light and unskilled occupations described at the hearing, and that such jobs existed in significant numbers in the national economy, such that Plaintiff was not disabled.[49]

## IV.    Plaintiff's Allegations of Error

On appeal, Plaintiff argues two assignments of error.  First, Plaintiff contends that the decision failed to give appropriate weight and consideration to the medical opinions of Plaintiff's treating physicians Dr. Walker and Dr. Bolter, as well as the opinions of internal medicine consultative examiner Dr. Davidson.[50]  Plaintiff also argues the decision relies on faulty vocational information at step five of the sequential evaluation process.[51]  As substantial evidence supports the Appeals Council's finding that Plaintiff was not disabled, the final decision should be affirmed.

## V.    Law and Analysis

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed.[52]  Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.  It is more than a mere scintilla and less than a preponderance.[53] A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[54]  Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side.[55]  In applying the substantial evidence standard, the court must review the entire record as whole, but may not reweigh the evidence, try

---

[49] AR p. 7.
[50] R. Doc. 8, pp. 6-10.
[51] R. Doc. 8, pp. 10-13.
[52] *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).
[53] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).
[54] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (*quoting Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).
[55] *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

9

the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.[56]

### A. Substantial Evidence Supports the Treatment of the Medical Evidence

Plaintiff argues that the final decision fails to give proper weight to the opinions of Plaintiffs' treating physicians as to Plaintiff's limitations, and to the opinion of the consultative examiner, Dr. Davidson.

### 1. The Appeals Council Corrected the Date Last Insured and Substantial Evidence Supports the Weight Given to the Opinions of Plaintiff's Treating Physicians

#### a. Dr. Walker's Opinions

Plaintiff argues that the ALJ failed to give appropriate weight to the opinions of Dr. Walker, including Dr. Walker's January 29, 2016 Medical Source Statement ("Statement"),[57] because he found that Dr. Walker's treatment was provided after September 30, 2015, the date the ALJ determined to be Plaintiff's date last insured.[58]  However, as the Commissioner points out (and Plaintiff recognizes), the Appeals Council corrected the date last insured to be March 31, 2016.[59] Despite this correction, the Appeals Council still declined to give weight to Dr. Walker's January 29, 2016 Statement on the same erroneous grounds as the ALJ, *i.e.*, that Dr. Walker's Statement post-dated Plaintiff's date last insured.[60]  While rejection of Dr. Walker's Statement for this reason was error, it was not prejudicial to Plaintiff because the ALJ also articulated other, valid grounds for rejecting Dr. Walker's Statement, which the Appeals Council also adopted.  Specifically, the ALJ found that Dr. Walker's three-hour limitation on standing and walking for Plaintiff in his

---

[56] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).
[57] AR pp. 419-21.
[58] R. Doc. 8, pp. 6-7, 9.
[59] R. Doc. 10, p. 6 and R. Doc. 8, p. 6.
[60] AR p. 6. ("[T]he hearing decision sufficiently rejected this opinion because Dr. Walker examined the claimant after the claimant's date last insured ….")

10

Statement conflicted with the findings of Dr. Bolter, another of Plaintiff's treating physicians, that Plaintiff had no apparent loss of strength and tone just one month earlier.[61]  During that same visit with Dr. Bolter, Plaintiff denied "back pain…, muscle weakness, stiffness, arthritis, sciatica…leg pain…paralysis, tingling, numbness…tremors…frequent falls…weakness."[62]  During a January 28, 2016 visit with Dr. Bolter, just one day prior to the date of Dr. Walker's Statement, Dr. Bolter observed that Plaintiff had a "normal gait and arm swing walking into office. Able to stand without wavering…no tremor at rest or with movement and no abnormal movements…."[63]  Thus, substantial evidence supports the Appeals Council's rejection of Dr. Walker's standing and walking limitations.

Moreover, Plaintiff alleges that the ALJ did not provide adequate grounds for his finding that Dr. Walker's Statement was "internally inconsistent," and argues that Dr. Walker's treatment records dating back to 2014 deserve consideration.[64]  However, the ALJ described the inconsistency in Dr. Walker's opinions.  Specifically, Dr. Walker's Statement opines that Plaintiff was able to engage in several types of exertional activities, such as lift/carry 40 pounds occasionally, lift/carry 20 pounds frequently, stand and walk for a total of three hours, sit for eight hours, and perform gross manipulative and fingering movements "more than frequently," all of which corresponded with performing light work.[65]  Despite these findings, Dr. Walker then opined

---

[61] *Compare* AR p. 419 *with* AR p. 404.
[62] AR p. 403.
[63] AR p. 427.
[64] R. Doc. 8, p. 7.
[65] *See* 20 C.F.R. §§ 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, *or when it involves sitting most of the time with some pushing and pulling of arm or leg controls*….If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.")  Dr. Walker's Statement opines that Plaintiff could stand or walk for three hours, but could sit for eight hours, could frequently lift/carry 20 pounds, could occasionally lift/carry 40 pounds, and could perform gross manipulative movements and fingering movements with both arms "more than frequently."  AR pp. 419-20.

that Plaintiff could not sustain employment, which is inconsistent.[66]  Dr. Walker's Statement regarding Plaintiff's exertional standing and walking limitations is also inconsistent with Dr. Walker's other treatment records, including Dr. Walker's December 2, 2014, February 10, 2015, and June 23, 2015 observations that Plaintiff had "normal range of motion," and at the June 23, 2015 visit, despite Plaintiff's complaints of right hip pain, Dr. Walker found that Plaintiff had "normal strength;" March 10, 2015 finding that Plaintiff's gait was "good;" September 23, 2015 notes reflecting review of Plaintiff's normal August 17, 2015 magnetic resonance imaging ("MRI") of the lumbar spine and brain and normal August 10, 2105 normal electroencephalogram ("EEG"), which were ordered by Dr. Kevin Callerame; and November 16, 2015 observations that Plaintiff had no back pain, lower extremity edema, numbness or weakness.[67]  *See also* September 2014 OLOL hospital records reflecting a normal computerized tomography ("CT") scan of Plaintiff's head/brain and spine and July 8, 2015 normal CT angiography ("CTA") of Plaintiff's head.[68]  Even considering Dr. Walker's treatment records (and those of other providers) from their inception in 2014 as Plaintiff urges, substantial evidence supports the Appeals Council's treatment of Dr. Walker's Statement because his records as a whole are inconsistent with the standing and walking limitations in his Statement and with other objective medical evidence in the record.[69]

Dr. Walker's past records are also inconsistent with Dr Walker's Statement regarding Plaintiff's mental impairments, *i.e.*, that Plaintiff was not capable of full-time work activity in part because of his diagnosis of anxiety, depression, poor concentration and memory loss.[70]  While Dr.

---

[66] AR pp. 420-21.
[67] AR p. 365, *citing* pp. 354-55, 417 and pp. 373, 377, 380, 420.
[68] AR pp. 293-94 and pp. 310-12, 342-44.  OLOL records reflect that Plaintiff had a normal electrocardiogram ("ECG") on July 8, 2015 as well. AR p. 357.
[69] *Newton*, 209 F.3d at 455-56 (citations omitted) (The ALJ may reject the opinion of a treating physician when the evidence supports a contrary conclusion.)
[70] AR p. 421.

Walker is not a mental health specialist,[71] Dr. Walker's records note anxiety and depression on only two occasions, December 2, 2014 (Plaintiff claimed depression in response to screening questions but denied anxiety, and further, upon exam, Plaintiff was noted to have a normal mood, affect and behavior) and September 23, 2015 (first diagnosis of generalized anxiety disorder, but Plaintiff was still found to have a normal mood, affect and behavior).[72]  Dr. Walker prescribed medicine for Plaintiff based on his complaints of anxiety and depression in September 2015 but Dr. Walker did not make any specific findings as to limitations arising out of these conditions. The rest of Dr. Walker's treatment records do not reflect that Plaintiff was experiencing anxiety. Specifically, Dr. Walker's February 10, 2015, March 10, 2015, June 23, 2015 notes state: "The patient is not nervous/anxious," and "He has a normal mood and affect. His behavior is normal," and his November 18, 2015 notes state that Plaintiff was not nervous/anxious. Dr. Walker continued to prescribe medication without making any specific findings regarding Plaintiff's claims of anxiety and depression.[73]  Furthermore, while the foregoing records reflect that Dr. Walker diagnosed generalized anxiety disorder in September 2015, Dr. Walker's January 29, 2016 Statement casts doubt on this diagnosis.  Specifically, Dr. Walker's Statement indicates that Plaintiff was diagnosed with anxiety, depression, poor concentration and memory loss, but also states that "pending psychiatric testing…will help to better diagnose his specific condition….*Once accurately diagnosed* he has an opportunity for improvement, depending on the diagnosis."[74] These statements suggest uncertainty as to Dr. Walker's diagnosis of anxiety and depression, and

---

[71] The opinion of a specialist is generally accorded greater weight than that of a non-specialist. *Locke v. Massanari,* No. 00-0238, 285 F.Supp.2d 784, 793 (S.D. Tex. July 20, 2001), *citing Newton*, 209 F.3d at 453.
[72] AR pp. 365, 379-80.
[73] AR pp. 373, 375, 377 *and see* AR p. 363.
[74] AR p. 421 (emphasis added).

therefore, they were properly given little weight, particularly since Dr. Walker is not a mental health specialist.[75]

### b.  Dr. Bolter's Opinions

Plaintiff assigns the same error with respect to the ALJ's provision of little weight to Dr. Bolter's May 23, 2016 Statement, and also argues that Dr. Bolter's earlier treatment records reflecting visits on December 4, 2015 (which visit both the ALJ and Appeals Council sometimes mistakenly attribute to Dr. Walker), January 28, 2016, and March 29, 2016 are entitled to consideration.[76] However, the Appeals Council re-considered Dr. Bolter's Statement (even though it post-dated the date last insured),[77] and gave weight to the portions of the Statement that opined that Plaintiff had moderate limitations in his ability to understand, remember, and carry out detailed instructions and make judgments on simple work-related decisions because those opinions were consistent with the record evidence showing occasional word retrieval and processing speed deficits.[78] The Appeals Council thus found, contrary to the ALJ, that Plaintiff had moderate

---

[75] Plaintiff was also treating with Dr. Bolter, a neuropsychologist.

[76] R. Doc. 7, *citing* AR pp. 401-05, 424-28, 456-60, 452-54. Dr. Bolter's February 2, 2015 note at AR p. 423 does not indicate an office visit with Plaintiff.

[77] In Reply, Plaintiff argues that the Appeals Council's action in correcting the date last insured and then considering the evidence given little weight by the ALJ because of the application of the incorrect date last insured (*i.e.*, the Statement of Dr. Bolter) did not correct the error.  R. Doc. 13, pp. 2-3. Plaintiff contends that the Appeals Council's action was only a correction on paper, and Plaintiff is prejudiced because only the ALJ could properly consider the rejected evidence as the fact finder at the hearing.  *Id.*  However, pursuant to 20 C.F.R. § 404.979, "After it has reviewed all the evidence in the administrative law judge hearing record and any additional evidence received… the Appeals Council will make a decision or remand the case to an administrative law judge. The Appeals Council **may affirm, modify** or reverse the administrative law judge hearing decision….**If the Appeals Council issues its own decision, it will base its decision on the preponderance of the evidence.**" (emphasis added).  Furthermore, "When the Appeals Council makes a decision… it will follow the same rules for considering opinion evidence as [ALJs] follow." *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015) *citing* 20 C.F.R. § 404.1527 (other citations omitted). Accordingly, the Appeals Council had the authority to correct the date last insured and re-consider the evidence given little weight by the ALJ.  AR pp. 4-7.  In this case, re-consideration of such evidence did not change the outcome of the decision, and after explaining its reasoning, the Appeals Council affirmed the ALJ's disability decision.

[78] AR pp. 6-7, *citing* AR p. 452 *and see* AR p. 404 (Dr. Bolter December 4, 2015 records reflecting word finding problems and poor processing speed).

limitations with respect to the first and third paragraph B criteria, *i.e.,* the ability to understand, remember or apply information and the ability to concentrate, persist or maintain pace.[79]

Plaintiff also argues that it was error for the Appeals Council not to include a limitation in the RFC based on the portions of Dr. Bolter's Statement that found that Plaintiff had moderate social functioning deficits and would need two or more absences per month because those portions were inconsistent with Plaintiff's self-reports and the mild treatment notes.[80]  Substantial evidence supports the weight accorded Dr. Bolter's Statement regarding Plaintiff's mental health limitations.  Plaintiff denied difficulty getting along with family, friends, neighbors, and others and reported that he had never been fired or laid off from a job due to difficulty in getting along with others.[81]  Furthermore, Dr. Bolter's other treatment notes contradict that Plaintiff had problems with social functioning.  *See* Dr. Bolter's December 4, 2015 treatment notes, wherein he found that Plaintiff was in no acute distress with appropriate range of affect, had normal speech and thought processes, had fair insight and adequate judgment, and was oriented as to time, place, and person, although Dr. Bolter diagnosed anxiety and prescribed medication for Plaintiff, at the time.[82]  At the next month's visit, *i.e.,* January 28, 2016, Dr. Bolter's notes reflect that Plaintiff was again in no acute distress with appropriate range of affect, had normal speech and thought processes, had fair insight and adequate judgment, and was oriented as to time, place, and person. Plaintiff reported that the medication Dr. Bolter prescribed helped Plaintiff, but he ran out of it.[83] The Appeals Council noted that at Plaintiff's third and final visit with Dr. Bolter on March 29, 2016, Plaintiff was oriented as to time, place, and person, but was found to have obsessive thoughts

---

[79] AR p. 5.
[80] AR p. 7; AR p. 452-54 (Dr. Bolter's Statement); AR p. 221-25 (Plaintiff's self-report); and *see* discussion *infra* citing the mild treatment notes.
[81] AR p. 5, *citing* AR pp. 225-26.
[82] AR pp. 404-05.
[83] AR pp. 424, 427.

with poor judgment and poor insight.  Dr. Bolter attributed these symptoms to "tension financially within [Plaintiff's] home," and "issues related to [Plaintiff's] family and apparent injury."[84] However, by the time of the third visit, Plaintiff was no longer on the medication that had previously helped him because of cost issues.[85]  The Appeals Council found Plaintiff's symptoms at the third exam to be an outlier, stemming from situational stressors.[86]  The Appeals Council's determination is supported by the records of Plaintiff's two prior visits with Dr. Bolter documenting normal social behavior, described above, as well as the records of other providers. *See* Dr. Walker's December 4, 2014, February 10, 2015, March 10, 2015, June 23, 2015, September 23, 2015, and November 16, 2015 notes, finding Plaintiff "oriented to person, place, and time," and finding that Plaintiff "has a normal mood and affect. His behavior is normal."[87] *See* OLOL August 28, 2014 records noting Plaintiff was cooperative with normal speech and was oriented to person, place, time and situation, and OLOL September 13, 2014, November 24, 2014, and July 8, 2015 records noting Plaintiff was "Cooperative, appropriate mood & affect," and oriented as to person, place, time and situation, with "normal speech observed."[88]  *See also* the March 18, 2015 notes of Dr. Davidson: "Lucid, alert, pleasant, cooperative and acts appropriately, making frequent eye contact.  Friendly and polite.  Oriented in all parameters…. Speech is adequate and understandable.  Rate, tone and volume normal…[Judgment and insight] fair.  Mood is euthymic. Affect is appropriate….His …cognitive skills and concentration are normal…He is able to communicate adequately.  He had no problems with ranges of climate or environment."[89]

---

[84] AR p. 7, *citing* AR p. 459 and p. 456.
[85] AR p. 456-57 (*see* "Meds."). *See, e.g*., *Johnson v. Bowen,* 864 F.2d 340, 348 (5th Cir. 1988) (An impairment that reasonably can be remedied or controlled by medication or therapy cannot serve as a basis for a finding of disability) *and see* 20 C.F.R. § 404.1530.
[86] AR p. 7.
[87] AR pp. 363, 365, 373, 375, 377, 379-80.
[88] AR pp. 287, 292, 299, 339.
[89] AR p. 333.

Substantial weight supports the Appeals Council's decision to reject the portions of Dr. Bolter's Statement that Plaintiff had moderate social functioning deficits, and concomitantly, supports the Appeals Council's decision to find that Plaintiff had only "mild" limitations in the second functional area of the paragraph B criteria, *i.e.,* the ability to interact with others.  No error was committed when Dr. Bolter's suggested limitation, *i.e*., that Plaintiff had moderate limitations in social functioning, was not included in the RFC.  The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity."[90]  A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record.[91]  This Court may not re-weigh the evidence, and a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[92]  In this case, the Appeals Council adopted the ALJ's findings at each step of the sequential process; however, the Appeals Council re-considered Dr. Bolter's opinions in his Statement but did not find that the portions regarding social deficits were supported by the evidence of record and thus affirmed the ALJ's RFC.

As substantial evidence supports the weight accorded the opinions of Drs. Walker and Bolter by the Appeals Council, Plaintiff's argument that the decision does not conform to the following provision of 40 C.F.R. § 404.1527(c)(2) also fails:[93]  "Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s)….," *and citing* 40 C.F.R. § 404.1527 (c)(2)(i): "…When the treating source has

---

[90] *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985).

[91] *Johnson*, 864 F.2d at 343; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[92] *Brown v. Apfel*, 192 F.3d 492, 796 (5th Cir. 1999), *Boyd*, 239 F.3d at 704, (*quoting Harris*, 209 F.3d at 417).

[93] R. Doc. 8, pp. 7-8.  This Regulation applies to claims filed before March 27, 2017.  For claims filed on that date and thereafter, 20 C.F.R. § 404.1520c applies, and it provides, *inter alia,* that no specific evidentiary weight is to be given to medical opinions from medical sources.

seen you a number of times…we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source." Plaintiff argues that SSR 96-2P[94] reiterates the foregoing and provides, "If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted…For a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be fully supported by such evidence. Whether a medical opinion is well-supported will depend on the facts of each case."

The ALJ may reject the opinion of a physician, such as Dr. Walker and Dr. Bolter, when the evidence supports a contrary conclusion.[95] With respect to treating physician opinions in particular, even though such opinions should normally be afforded considerable weight in determining disability, the Fifth Circuit has long recognized that "the ALJ has sole responsibility for determining a claimant's disability status."[96] A treating physician's opinion is not conclusive.[97] The ALJ may give less weight to a treating opinion when good cause is shown — *i.e.*, when the opinion is brief and conclusory, when the opinion is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.[98]

---

[94] SSR 96-2P, 2017 WL 3928297, "Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions" was rescinded for claims filed on or after March 27, 2017, in conformance with the restricted applicability of 40 C.F.R. § 404.1527, which, as mentioned, now only applies to claims filed before March 27, 2017.

[95] *Newton*, 209 F.3d at 455-56 (citations omitted).

[96] *Newton,* 209 F.3d at 455 (citations omitted).

[97] *Brown*, 192 F.3d at 500.

[98] *See Scott v. Heckler,* 770 F.2d 482, 485 (5th Cir. 1985). *See Martinez v. Chater,* 64 F.3d 172, 175-76 (5th Cir. 1995), *superseded by statute on other grounds,* (finding treating physician opinion not controlling because the opinion lacked a medical explanation and was inconsistent with the opinions of other doctors that were based on clinical test results).

Plaintiff further argues that, even if treating source opinions are not given controlling weight, the opinions should not be rejected; rather, they are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527,[99] *i.e.*, length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with the record, and specialization.[100]  The ALJ and the Appeals Council provided good cause for giving the proffered Medical Source Statements little weight after evaluating the foregoing factors because the Statements were inconsistent with the record as a whole and because they were not supported by other evidence in the record.[101]  In *Collins*, cited by Plaintiff, after setting forth the six factors above, the district court held that the ALJ did not err in refusing to give the opinion of the plaintiff's treating physician controlling weight based on the same two factors relied on in the final decision here, *i.e.*, lack of supportability and consistency.[102]  More importantly, the Fifth Circuit has held that ALJs are not required to consider the § 404.1527(c) factors before dismissing a treating physician's opinion, where, as here, there is competing first-hand medical evidence contradicting that opinion.[103]

Plaintiff also argues that the final decision erred in crediting the opinion of Dr. Bolter, that Plaintiff had no loss in strength or tone, over Dr. Walker's standing and walking limitations

---

[99] R. Doc. 8, p. 8, *citing Newton*, 209 F.3d at 453, and *Collins v. Astrue*, No. 07-1684, 2008 WL 4279396 (S.D. Tex. Sept. 16, 2008).

[100] 20 C.F.R. § 404.1527(c); *Brooks v. Commissioner of Social Security*, No. 15-2280, 2016 WL 6436791,*8 (W.D. La. Sept. 26, 2016), *citing Myers*, 238 F.3d 617, (*citing Newton*, 209 F.3d at 456).

[101] AR pp. 6-7, 44-46.

[102] 2008 WL 4279396 at *22.

[103] *Brooks*, 2016 WL 6436791, at *8 (The ALJ was not required to analyze the criteria for rejecting the treating specialist's source opinion because other treating physicians' opinions were available), *citing Jones v. Colvin*, 638 Fed.Appx. 300, 304 (5th Cir. 2016); *Wooten v. Colvin*, 2016 U.S. Dist. LEXIS 38364, n. 1 (N.D. Tex. March 24, 2016); *Qualls v. Astrue*, 339 Fed.Appx. 461, 467 (5th Cir. 2009) ("The *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it"); *see also Thibodeaux v. Astrue*, 324 Fed.Appx. 440, 445 (5th Cir. 2009) (*citing Newton*, 209 F.3d at 453, 456) (when the record contained "reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, ... the ALJ was not required to apply the criteria set forth in 20 C.F.R. § 404.1527(d)(2).").

because Dr. Bolter is a Ph.D. and not an M.D.[104]  Even if Dr. Walker could be considered more of a specialist in this area than Dr. Bolter, that was not the only grounds upon which the ALJ decided to give little weight to Dr. Walker's Statement.  As explained previously, the ALJ and the Appeals Council also found that Dr. Walker's Statement was internally inconsistent in his opinions as to the exertional activities that Plaintiff could perform and other tests in the record.[105]

### 2.  Substantial Evidence Supports the Treatment of Dr. Davidson's Opinions

Plaintiff argues that the ALJ erred in not giving more weight to the opinion of Dr. Davidson, the consultative examiner, that Plaintiff could perform "very light exertional activities as tolerated at present."  Dr. Davidson opined that, while Plaintiff could sit, stand, walk, lift/carry or push/pull ten pounds, use his hands for repetitive action, fine manipulation, and all grasping, and operate foot pedals, Plaintiff could not bend, squat, stoop, crouch, kneel, crawl, balance, climb, twist, reach and turn.[106]  The Appeals Council held that the ALJ correctly rejected Dr. Davidson's limitations because the ALJ found that they conflicted with the exams showing no neurological deficits and with Plaintiff's self-reported activity.[107] Substantial evidence supports this finding, as (1) all of Plaintiff's neurological tests were negative or normal;[108] (2) neurologist Dr. Callerame's July 28, 2015 examination noted a "normal" motor exam of Plaintiff's muscles and right and left arms and legs, 5/5 strength (although limited by neck and back pain), normal coordination, no tremors, and only "tenderness" in the lower back and right upper buttocks;[109] (3) Dr. Davidson's

---

[104] R. Doc. 13, pp. 3-4; AR pp. 6, 46, and 404, 419-21.
[105] AR pp. 45-46.
[106] R. Doc. 8, p. 9; AR p. 333.
[107] AR p. 6.
[108] AR pp. 293-94 and AR pp. 310-12, 342-44 (normal CT and CTA of the brain and spine), AR p. 357 (normal ECG), AR pp. 354-55 (normal MRI of the lumbar spine and brain), and AR p. 417 (normal EEG).
[109] AR pp. 370-71. Dr. Callerame noted that Plaintiff had pain with movements and his strength was limited by neck and back pain; however, he also noted that Plaintiff gave "little effort when testing legs" and Plaintiff was "diff. to test." *Id.*  Dr. Callerame sent Plaintiff for nerve testing; however, the testing could not be continued after the first nerve studied because of Plaintiff's discomfort.  AR p. 397.

March 2015 examination of Plaintiff revealed good range of motion in the right hip, feet and toes, stable knees and ankles, normal coordination, equilibrium, stable stance, strength 5/5 in all extremities, and that Plaintiff could stand/sit/stand and sit/lie/sit without difficulty;[110] and, (4) Plaintiff self-reported that he could take care of small family matters, feed his pet and son, cook some meals, take out the trash, drive, dance, and get his son on and off of the school bus.[111] Notably, Plaintiff was asked to indicate the abilities that his conditions affected, and Plaintiff did *not* indicate that his conditions affected his ability to squat, bend, stand, reach, sit, kneel, hear, climb stairs, see, or use his hands. Plaintiff further indicated in his report that he could walk for "about 20 minutes" before he needed to stop and rest.[112] Furthermore, Dr. Walker's Statement indicated that a cane was not required for Plaintiff, and Plaintiff admitted that his cane was not prescribed.[113] Therefore, substantial evidence supports the RFC in the final decision of a restricted range of light work, which does not include the limitations suggested by Dr. Davidson.

### B.  No Error Was Committed at Step 5 of the Sequential Evaluation Process

While the claimant has the burden in the first four steps of the sequential process to prove disability,[114] at step 5, the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education and past work experience, that he or she is capable of performing other work.[115]  In this case, the ALJ primarily relied on the testimony of the VE to prove that Plaintiff is capable of performing other work.  The VE testified that, considering Plaintiff's age, education, prior work experience and RFC, Plaintiff could not perform his past work of food preparation

---

[110] AR p. 332-33.
[111] AR pp. 221-24.
[112] AR p. 225.  *Cf.* Plaintiffs testimony, wherein he claimed that he could only walk one or two steps because of pain. AR p. 67. However, that testimony is contradicted by Plaintiff's admission that he is not prescribed any pain medication, *see* AR p. 63, and further, the ALJ is entitled to discredit inconsistent testimony.  *See Brooks*, 2016 WL 6436791 at *9.
[113] AR p. 63, 420.
[114] *Muse*, 925 F.2d at 789.
[115] 20 C.F.R § 404.1520(g)(1).

cook, pizza delivery driver, pizza cook, and dishwasher as they were all considered "medium" in strength level,[116] but could perform the "light" jobs of inspector, tester, sorter, sampler, and weigher, Dictionary of Occupational Titles ("DOT") code 788.687-046;[117] cashier, DOT code 211.462-010;[118] and maid and housekeeping cleaner, DOT code 323.687-014.[119]  The VE further testified that all such occupations would be reduced by one-half due to Plaintiff's limited education.[120]  The ALJ found that the VE testimony was consistent with the information contained in the DOT and adopted the VE's testimony, finding that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy.[121]  After addressing and ultimately rejecting Plaintiff's arguments, the Appeals Council adopted the ALJ's findings on this issue.[122]

Plaintiff argues that the ALJ erred in finding that jobs existed in significant numbers in the national economy that Plaintiff can perform based on his RFC because the ALJ relied upon faulty VE testimony.  Plaintiff argues two errors in this regard; however, both arguments fail.

### 1.  The Record Reflects an Adequate Basis for Reliance on the VE's Testimony

First, Plaintiff contends that two of the VE's suggested occupations, *i.e.*, floorwalker, DOT code 788.687-046, and cashier, DOT code 211.462-010, are in conflict with the RFC posed by the ALJ because, while both are of a light strength level and unskilled, *i.e.*, SVP-2, they have

---

[116] AR p. 83.
[117]  However, DOT code 788.687-046 specifically refers to "Floorwalkers, Lasting."  *See* https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT07F.HTM for the description.  (The title referenced by the VE appears to be the title that is cross-referenced to this DOT code under the O*Net, which is not applicable to Social Security Appeals.)  The VE testified that there were 1,567 such jobs in Louisiana and 114,655 in the United States.  AR p. 84.
[118] *See* https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT02A.HTM for the description.  The VE testified that there were 16,748 such jobs in Louisiana and 909,930 in the United States. AR p. 85.
[119] *See* https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT03A.HTM.  The VE testified that there were 6,636 such jobs in Louisiana and 429,213 in the United States.  AR p. 85.
[120] AR pp. 84-85.
[121] AR p. 47 *and see* SSR 00-04P, 2000 WL 1898704.
[122] AR pp. 5-7.

Reasoning Development Levels ("Reasoning Levels")[123] of two and three, respectively.[124] According to Plaintiff, jobs with Reasoning Levels of two and three[125] are inconsistent with the ALJ's restriction that Plaintiff was "limited to remembering, understanding, and carrying out simple and routine tasks" because jobs at those Reasoning Levels require reasoning beyond the ALJ's limitations and beyond what Plaintiff is capable of performing. According to Plaintiff, jobs with a Reasoning Level of one[126] are the only jobs consistent with the ALJ's limitation.[127] Second, Plaintiff argues that the VE provided no explanation for her testimony that the applicable jobs would be reduced by one-half due to Plaintiff's limited education.

ALJs may rely on either VE testimony or the DOT when determining whether a claimant can make an adjustment to other work at step five of the sequential evaluation process.[128] Given their differing degrees of specificity, it is foreseeable (if not inevitable) that a VE's opinion of a claimant's ability to do other work may conflict with the DOT's requirements for particular jobs. These conflicts occur frequently enough that the Commissioner has issued an interpretive ruling on the subject.[129] As this Court has already recognized:

---

[123] "Reasoning Development Level" is one component of a General Educational Development ("GED") score. "General Educational Development (GED), a component of Worker Characteristics, embraces those aspects of education (formal and informal) which contribute to the worker's (a) reasoning development and ability to follow instructions, and (b) acquisition of "tool" knowledge such as language and mathematical skills. This is education of a general nature which does not have a recognized, fairly specific occupational objective...." *See* the Handbook at p. 7-1. GEDs are comprised of scores given for Reasoning Development Level, Mathematical Development Level, and Language Development Level. *Id.* Plaintiff challenges the Reasoning Development Levels of the GEDs for the referenced jobs. R. Doc. 8, p. 12.

[124] A Reasoning Level of two is defined as a worker being able to "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." A Reasoning Level of three is defined as a worker being able to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *See* the Handbook at p. 7-3.

[125] R. Doc. 8, pp. 11-12 and AR p. 43.

[126] A Reasoning Level of one is defined as a worker being able to "Apply commonsense understanding to carry out simple one-or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *See* the Handbook at p. 7-3.

[127] R. Doc. 8, pp. 12-13 and R. Doc. 13, pp. 4-5.

[128] *See* 20 C.F.R. § 404.1566(d)-(e).

[129] *See* SSR 00–4P, 2000 WL 1898704 at *2.

23

An ALJ may in appropriate cases give more weight to a Vocational Expert's testimony than to the DOT. *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). And that rule makes sense considering the DOT provides only standardized job information, whereas VE testimony is tailored to an individual claimant's work skills and limitations as relayed by the ALJ through hypothetical questions. *Gaspard*, 609 F. Supp. 2d at 613. But neither source automatically trumps the other, and both initially have equal effect. *Romine v. Barnhart*, 454 F. Supp. 2d 623, 626 (E.D. Tex. 2006).

An ALJ's discretion to choose between conflicting evidence from a Vocational Expert and the DOT is not unfettered, however. In *Carey v. Apfel*, the Fifth Circuit embraced what it called a "middle ground." 230 F.3d at 147. When a direct and obvious conflict exists, and the ALJ fails to explain or resolve the conflict, the VE's testimony cannot constitute substantial evidence at Step 5, warranting reversal and remand. *Id.* at 145-46. But when the conflict is tangential, implied or indirect, and it did not undergo adversarial development at the administrative hearing, the VE's testimony may be accepted and relied upon by the ALJ without resolving the later-proffered conflict provided the record reflects an adequate basis for doing so. *Id.* at 146.

The Commissioner's policy concerning conflicts between VE testimony and the DOT provides that in all cases "the adjudicator has an affirmative responsibility to ask about any possible conflict between ... VE ... evidence and information provided in the DOT."

SSR 00–4P, 2000 WL 1898704, at *4. And "[w]hen there is an *apparent unresolved* conflict between VE [testimony] and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE" at Step Five. *Id.* at *2.[130]

The ALJ complied with SSR 00-4P by asking whether the VE's testimony conflicted with the relevant DOT information. Plaintiff did not to ask the VE any questions during the hearing.[131] As such, nothing at the hearing prompted the ALJ to obtain any explanation for, and explain his resolution of, any alleged conflicts. However, Plaintiff now argues that a conflict exists between the RFC's limitation of "remembering, understanding, and carrying out simple and routine tasks"

---

[130] *Sasich v. Colvin,* No. 15-461, 2016 WL 7826808, *5 (M.D. La. Nov. 14, 2016).
[131] AR p. 86.

and the DOT's Reasoning Levels of two and three for two of the referenced jobs. As guided by the Fifth Circuit in *Carey*, the Court must examine if a direct conflict exists. If the conflict is indirect and Plaintiff's attorney failed to develop the conflict during cross-examination, the Court must examine whether substantial evidence supports the ALJ's decision.[132]

A direct conflict does not exist. The ALJ did not specifically limit Plaintiff to jobs with a Reasoning Level of one, or even jobs that require only one- or two-step instructions (as set forth in the definition explaining a Reasoning Level of one), as Plaintiff contends; rather, the limitation was that the jobs require only "simple and routine tasks." The ALJ specified that limitation in the hypotheticals posed to the VE.[133] As recognized in *Sasich*, multiple courts have found no direct conflict between a limitation to simple, repetitive tasks with one to three-step instructions (or unskilled work) and jobs requiring a Reasoning Level of two or three.[134]

---

[132] *See Carey*, 230 F.3d at 145-48; *Hernandez v. Berryhill*, No. 17-260, 2018 WL 1278213 (W.D. Tex. Mar. 9, 2018).

[133] *Compare* R. Doc. 8, p. 12, and R. Doc. 13, pp. 4-5 *with* AR p. 8, 43, 46 and the testimony at AR pp. 83-84:
"Q: All right. Hypo 2--…Again, light…And limited to remembering, understanding, and carrying out simple and routine tasks. With that hypothetical, would there be jobs—other jobs?
A. The last---avoid concentrated exposure to pulmonary irritants and simple—
Q: Simple and routine.
A: Simple and routine. Okay.
…
A: …Your Honor, I have inspectors, testers, sorters, samplers, and weighers."

[134] *Sasich*, 2016 WL 7826808, at *5, *citing Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) ("no such conflict appears to exist" between job requiring reasoning level of 3 and claimant's limitation to simple, unskilled work involving concrete instructions); *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (no direct conflict between limitation to simple or unskilled work and jobs requiring a reasoning level of 3); *Hurtado v. Commissioner of Social Sec.*, 425 Fed.Appx. 793, 794-95 (11th Cir. 2011) (limitation to simple, routine tasks do not conflict with reasoning level of 3); *Morris v. Commissioner of Social Sec. Admin.*, 421 Fed.Appx. 693, 694 (9th Cir. 2011) (reasoning level 3 did not require complex tasks in excess of RFC for unskilled work); *Gaspard v. Social Security Administration, Commissioner*, No. 7-943, 609 F.Supp.2d 607, 617 (E.D. Tex. Apr. 8, 2009) ("jobs requiring reasoning level 2 or higher" are not in direct conflict with limitation to "simple one or two-step tasks on a repetitive basis"); *Johnson v. Astrue*, No. 11-3030, 2012 WL 5472418, at *13 (E.D. La. Oct. 5, 2012) ("[T]here is no direct conflict between the [DOT] definition of the job ... which requires a maximum Reasoning Level of 3, and [the VE's] testimony that a claimant with a limitation to simple, repetitive and routine tasks is capable of performing the job."); *Webb v. Astrue*, No. 408-747, 2010 WL 1644898, at *12, n. 10 (N.D. Tex. Mar. 2, 2010) ("A job as a city bus driver that requires a [GED reasoning level] of three is not necessarily inconsistent with an RFC that includes only the ability to perform simple, routine work tasks."); *Welch v. Astrue*, No. 11-384, 2012 WL 3113148, at *7 (D.Me. July 11, 2012) ("no conflict existed between a limitation to 'simple and unskilled' work and a GED level 3 classification"); *Thacker v. Astrue*, No. 11-246, 2011 WL 7154218, at *3 (W.D.N.C. Nov. 28, 2011) ("there is no conflict between a job classified at reasoning level three and a limitation to simple, routine, unskilled work.").

In the absence of any direct or apparent conflict, the ALJ's reliance on the VE's testimony, including the suggested jobs and the fifty percent reduction,[135] was not reversible error and neither *Carey* nor SSR 00-4P requires remand. Under the circumstances, any conflict is indirect or implicit, at best. Moreover, Plaintiff failed to raise the existence of any conflict during the hearing and chose not to cross-examine the VE.[136] As such, whether an indirect conflict does in fact exist is a "point [that] cannot be entertained in this proceeding because it was not developed in the adversarial context at the administrative hearing."[137]

Further, the "record reflects an adequate basis" for the ALJ to rely on the VE's testimony.[138] Plaintiff initially self-reported that he is capable of performing simple and routine tasks and "small family matters," and that he can follow written instructions "fairly." He also self-reported that he is capable of: making sandwiches and stir-fry weekly, taking out the trash, going out alone, driving short distances, reading books, including those regarding "medevil [sic] studys,

---

[135] While Plaintiff now takes issue with the VE's fifty percent reduction, Plaintiff did not cross-examine the VE at the hearing on this issue and thus waived this argument. *Gaspard*, 609 F.Supp.2d at 617. Further, the record reflects an adequate basis for the VE's testimony. In the job category that Plaintiff does not contest, *i.e.*, maids and housekeeping cleaners, which has a Reasoning Level of one, the VE testified 6,636 jobs exist in Louisiana and 429,213 exist in the United States. Even if reduced significantly lower than the fifty percent reduction suggested by the VE, there would still be jobs in this category in significant numbers. For example, there would be 664 jobs in Louisiana, even if reduced to ten percent. *See, e.g., Lirley v. Barnhart*, 124 Fed.Appx. 283, 284 (5th Cir. 2005) (one occupation with 50,000 jobs in the nation is a significant number); *McGee v. Astrue*, No. 08-0831, 2009 WL 2841113, at *6, n. 14 (W.D. La. Aug. 28, 2009) (one occupation with 150 jobs in the state and 18,760 jobs in the nation is a significant number); *Mercer v. Halter*, No. 00-1257, 2001 WL 257842, at *6 (N.D. Tex. Mar. 7, 2001) (one occupation with 500 jobs in the state and 5,000 jobs in the nation is a significant number). Any error in the final decision based on a fifty percent reduction (as opposed to some other, lower number) in available jobs to account for Plaintiff's limited education is harmless.

[136] *See also Carey,* 230 F.3d at 146–47: "Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing."

[137] *Gaspard*, 609 F.Supp.2d at 617.

[138] *Carey*, 230 F.3d at 146; *Gaspard*, 609 F.Supp.2d at 617-18 ("Under *Carey v. Apfel*, even when an indirect conflict ... is waived ... once it is raised in an action for judicial review, the court must still investigate whether the record reflects an adequate basis for relying on VE Boweden's testimony.); *Abel v. Astrue*, No. 09-327, 2011 WL 1099890, at *7 (S.D. Miss. March 2, 2011) (because no direct conflict between reasoning level of 3 and limitation to simple, repetitive tasks, and claimant failed to raise any conflict at hearing, the question "is simply whether the record reflects an adequate basis for the ALJ's reliance on the Vocational Expert's testimony"); *Johnson*, 2012 WL 5472418 at *15 ("In such circumstances, Johnson cannot challenge in this court any implied or indirect conflict that she failed to raise at the hearing.").

(S.C.A.),"[139] playing board and card games, caring for his minor son and the family cat, and caring

for himself with "no problem."[140]  After considering Plaintiff's self-report and testimony and the

various negative/normal neurological and pulmonary tests, the ALJ found that Plaintiff had the

mental RFC to perform simple and routine tasks, which the Appeals Council affirmed after re-

considering the opinions of Dr. Bolter.[141]  The ALJ specified that limitation in his hypotheticals to

the VE.[142]  Based on the ALJ's hypothetical, the VE described three jobs in the national and

regional economy that Plaintiff could do based on his physical and mental limitations, including

light and unskilled jobs.[143]  One of those job categories is not challenged by Plaintiff.  The ALJ

and the Appeals Council adopted the VE's testimony,[144] for which there is an adequate basis in

the record.

### 2. The Occupation of Maids and Housekeeping Cleaners Has a Reasoning Level of 1 and a Significant Number of Jobs

Even if the floorwalker and cashier jobs were excluded, the third category of jobs to which

the VE testified, *i.e.*, maids and housekeeping cleaners, has a Reasoning Level of one, which

Plaintiff does not contest.[145]  The VE testified that 6,636 such jobs exist in Louisiana and 429,213

exist in the United States, which, when reduced by half to accommodate Plaintiff's limited

education, becomes 3,318 and 214,606 such jobs.[146]  Plaintiff's argument that proof of only one

---

[139] "SCA" appears to refer to the Society for Creative Anachronism, Inc., which according to its website is: "[A]n international non-profit volunteer educational organization. The SCA is devoted to the research and re-creation of pre-seventeenth century skills, arts, combat, culture, and employing knowledge of history to enrich the lives of participants through events, demonstrations, and other educational presentations and activities." *See* https://www.sca.org/.
[140] AR pp. 221-25.  *See also* Plaintiff's testimony at AR pp. 64-65, 72 (Plaintiff can get dressed by himself, make small meals, and drive half a mile), AR p. 66 (Plaintiff could shop for groceries with a list and his wife present), AR p. 67 (Plaintiff can walk half a block with his cane), and AR p. 69 (Plaintiff's hands shake but he can use them and Plaintiff's shoulder pain is not as bad as it used to be).
[141] AR pp. 44-45 and AR pp. 6-7.
[142] AR p. 84.
[143] AR p. 84-85.
[144] AR pp. 7, 47-48.
[145] AR p. 47, 85 and R. Doc. 8, p. 13.
[146] AR p. 85.

job category is insufficient has no merit.[147]  Work exists in the national economy "when there is a significant number of jobs (in **one or more** occupations) having requirements which [the Plaintiff is] able to meet . . . ."[148]  There is no bright line standard for what constitutes a "significant number" of jobs in the national economy; rather, courts have left this determination to a trial judge's discretion "upon a pragmatic consideration of both the number of DOT occupations identified and the number of jobs available."[149]  However, the district courts in this Circuit have held that the Commissioner satisfies her burden at step five by showing "the existence of only *one* job with a significant number of available positions that the claimant can perform."[150]  Furthermore, the Fifth Circuit and the district courts therein have found that a significant number of jobs exist on numbers less than those suggested by the ALJ in this case.[151]  As shown above, substantial evidence supports a finding that the Commissioner sustained her burden of proof at step five of the sequential evaluation process.

**VI.    Recommendation**

The analysis above demonstrates that Plaintiff's claims of reversible error are without merit.  The record considered as a whole supports the finding that the ALJ applied the proper legal standards and substantial evidence supports the determination that Plaintiff was not disabled.

---

[147] R. Doc. 13, p. 5.

[148] 20 C.F.R. § 404.1566(b) (emphasis added).

[149] *Morris v. Colvin,* No. 15-284, 2016 WL 4523238, at *4 (E.D. Tex. Aug. 30, 2016), *citing e.g., Mercer v. Halter*, No. 00-1257, 2001 WL 257842, at *6 (N.D. Tex. Mar. 7, 2001) (noting that the question of whether work exists in significant numbers "has been left to the trial judge's common sense in the face of the statutory language and a particular fact situation" and noting a variety of different numbers of jobs that have been found to be a "significant number" under such test); *Davis v. Astrue*, No. 06-883, 2008 WL 517238, **3-6 (N.D. Tex. Feb. 27, 2008) (finding that the "significant numbers" decision is a factual determination).

[150] *Gaspard,* 609 F.Supp.2d at 617 (citations omitted); *Caronia v. Colvin*, No. 12-595, 2013 WL 5192904, at *7 (N.D. Tex. Sept. 13, 2013)

[151] *See, e.g., Lirley v. Barnhart,* 124 Fed.Appx. 283, 284 (5th Cir. 2005) (one occupation with 50,000 jobs in the nation is a significant number); *McGee v. Astrue,* No. 08-0831, 2009 WL 2841113, at *6, n. 14 (W.D. La. Aug. 28, 2009) (one occupation with 150 jobs in the state and 18,760 jobs in the nation is a significant number); *Mercer,* 2001 WL 257842, at *6 (one occupation with 500 jobs in the state and 5,000 jobs in the nation is a significant number).

Accordingly, the undersigned **RECOMMENDS** that under sentence four of 42 U.S.C. § 405(g),

the final decision of the Acting Commissioner of Social Security be **AFFIRMED,** and this action

be **DISMISSED with prejudice**.

      Signed in Baton Rouge, Louisiana, on August 29, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

29